**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 23-1883

T.H. GLENNON CO., INC.,

Plaintiff, Appellant,

v.

DEBRA MONDAY, individually and as Manager of TMG Green LLC; TMG
GREEN, LLC; ULDERIC BOISVERT, individually and as Manager of
Greenwood Farms, LLC and as President of H.U.R.B Landscaping,
Inc.; GREENWOOD FARMS, LLC; H.U.R.B. LANDSCAPING, INC.;
Pat Does 1-5,

Defendants, Appellees,

SHONN MONDAY, individually and as Manager of TMG Green LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Gelpí, Thompson, and Dunlap,
Circuit Judges.

Michael C. Walsh, with whom Walsh & Walsh LLP was on brief,
for appellant.

Ronaldo Rauseo-Ricupero, with whom Nixon Peabody LLP was on
brief, for appellees H.U.R.B. Landscaping and Boisvert.

April 17, 2026

**THOMPSON, <u>Circuit Judge</u>.** Writing only for the parties -- who well know the facts, the case history, and the arguments -- we see no reason to beat around the bush: we **<u>reverse</u>** the dismissal of the claims against Debra Monday but **<u>affirm</u>** the dismissal of the claims against the other defendants.[1]

Here's just a bit of context before we get there, though. After plaintiff/appellant T.H. Glennon Co., Inc. ("Glennon") fired salesman Shonn Monday (a Massachusetts resident), Glennon's leadership team learned that Shonn had breached his non-disclosure agreement.[2] His purported offenses? In short, stealing Glennon's confidential corporate info and starting a competitor company in the apparently cut-throat world of mulch coloring and landscaping equipment.

So (trimming down the procedural history quite a bit) Glennon sued Shonn as well as today's appellees: his wife Debra (also a Massachusetts resident), their new company TMG Green, and their suspected collaborators, the New York-based H.U.R.B. Landscaping and its officer Ulderic Boisvert. The Massachusetts federal district court dismissed several claims and then bifurcated the proceedings, pausing the case for all the defendants

---

[1] All these dismissals were without prejudice.

[2] We call Shonn Monday "Shonn" and Debra Monday "Debra" to avoid confusion, but we mean no disrespect in using their first names.

except Shonn. It then held a bench trial just for the claims against him, and, in a fifty-six-page written decision, found him liable to Glennon for several claims. After some more briefing, the court (in a text order) dismissed without prejudice the remaining claims against all the other defendants for a lack of personal jurisdiction.[3]

In a twenty-four-page appellate brief containing just eleven pages of argument, Glennon appeals those dismissals. It makes one good point -- the claims against Debra shouldn't have been dismissed based on a lack of personal jurisdiction -- but the remainder of its arguments lack merit, are waived, or both; none require extended discussion.[4]

## I. DEBRA MONDAY

For starters, we agree with Glennon's uncontested argument that the district court wrongly dismissed Debra on the

---

[3] The order in full:

> Treating the opposition to reopening the case as a renewed motion to dismiss, the motion is allowed without prejudice to allow the plaintiff to either re-file in a district where personal jurisdiction is clear or to re-file in Massachusetts with detailed averments supporting the exercise of personal jurisdiction and affidavits and other evidentiary materials making out a prima facie case of personal jurisdiction.

[4] And because none of these arguments break new ground, we also choose not to publish the opinion.

- 4 -

same personal jurisdiction grounds as the out-of-staters.[5]  The Massachusetts federal district court of course has personal jurisdiction over this Massachusetts resident who was served at her Massachusetts abode.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").  So we reverse the district court's personal-jurisdiction-based dismissal of Glennon's claims against Debra.[6]  On remand, the district court remains free to consider the other arguments Debra raised below.

## II. H.U.R.B. & BOISVERT

We now turn to Glennon's bouquet of arguments for why the district court erred in dismissing H.U.R.B. and Boisvert for want of personal jurisdiction.[7]  None uproot the decision below.

1. Glennon first proclaims that its civil RICO claim conferred personal jurisdiction over H.U.R.B. via a nationwide jurisdiction provision.  But before trial, the district court dismissed that claim on the pleadings because there was "only one

---

[5] By "uncontested," we mean Debra didn't file a brief or show up to argument.

[6] Glennon's briefs don't mention TMG Green (Shonn and Debra's shared company), so we don't revive the claims against it even though the company was lumped in exactly like Debra.

[7] We'll just refer to H.U.R.B. throughout this section, but the analysis applies equally to Boisvert.

predicate act that's alleged and that's not enough." (It thus didn't consider whether the civil RICO claim establishes personal jurisdiction over H.U.R.B.) On appeal, Glennon seems to say that the district court was wrong to dismiss the claim, because an "ongoing scheme" took place -- a "years long campaign of industrial espionage," in fact, composed of multiple predicate acts like Shonn deleting files, stealing research, and feeding bad information to Glennon. And (says Glennon) H.U.R.B. was in on it, so personal jurisdiction attached to it because a properly pled civil RICO claim confers nationwide jurisdiction.

Though the district court's dismissal of the civil RICO claim poses a legal question we review de novo, see Lerner v. Colman, 26 F.4th 71, 76 (1st Cir. 2022), Glennon does not adequately explain on appeal why the district court erred in dismissing it. Glennon's appellate brief just summarizes the complaint and (at the end of that summary) states that several predicate acts ("wire fraud, mail fraud, industrial espionage and computer fraud and abuse") occurred, without telling us more. Notably, the brief doesn't specify how Glennon's pleadings adequately alleged at least two "predicate acts" under RICO (aside from the trade secrets violation that the complaint and the district court seemed to key in on). See id. at 77. Nor does it explain how those purported predicate acts comport with the "heightened particularity requirements" for alleged predicate acts

- 6 -

of wire and mail fraud.  See Douglas v. Hirshon, 63 F.4th 49, 55 n.7 (1st Cir. 2023) (noting that, for RICO claims "based on alleged predicate acts of mail and wire fraud," the complaint "must state the time, place, and content of the alleged mail and wire communications perpetrating that fraud" (cleaned up)).  Glennon actually doesn't cite a single RICO case, and that's a big problem in and of itself.  See Rodríguez-Machado v. Shinseki, 700 F.3d 48, 49 (1st Cir. 2012) (finding an argument waived for inadequate development when "incredibly, [the party] cites no caselaw at all").

In contrast, H.U.R.B.'s opposition brief "reviews in [some] detail the case law and concepts that would need to be addressed to develop" a winning civil RICO claim and explains why Glennon's isn't one.  Doherty v. Merck & Co., 892 F.3d 493, 501 (1st Cir. 2018).  Meanwhile, Glennon's reply "offers no response" to those RICO arguments, posing waiver issues.  Id.

And even assuming Glennon provided a good argument for why it adequately pled a civil RICO claim, it doesn't even try to explain which subsection of the civil RICO statute confers nationwide personal jurisdiction over H.U.R.B.[8]  See 18 U.S.C.

---

[8] In its brief, Glennon doesn't even cite the general statute that could confer nationwide personal jurisdiction.  And its complaint below, which just says that "[t]he Court has personal jurisdiction over the Defendants, especially under the RICO law," provides no greater insight.

§ 1965.  As far as we can tell, that's an important question not settled in our circuit and subject to disagreement across our sister circuits and even our district courts.[9]  "Such a skimpy effort to advance an issue . . . waives the issue."  Doherty, 892 F.3d at 501.[10]

2.  But that isn't the only theory of personal jurisdiction that Glennon offers.  Distinct from any RICO arguments, Glennon next says it satisfied the prima facie standard for specific personal jurisdiction.[11]  Yet Glennon's specific

---

[9]  See, e.g., Naicom Corp. v. DISH Network Corp., No. 3:21-CV-01405-JAW, 2024 WL 1363755, at *19 (D.P.R. Mar. 29, 2024), aff'd, No. 24-1416 (1st Cir. Dec. 2, 2025) ("Courts disagree on which subsection of 18 U.S.C. § 1965 authorizes nationwide service of process, and therefore allows the exercise of personal jurisdiction over defendants lacking sufficient minimum contacts to the forum."); Dispensa v. Nat'l Conf. of Cath. Bishops, No. 19-CV-556-LM, 2020 WL 2573013, at *10 (D.N.H. May 21, 2020) ("There are, in addition, differences among the circuits as to when 'the ends of justice require' the exercise of personal jurisdiction over defendants lacking traditional minimum contacts with the forum." (quoting 18 U.S.C. § 1965(b))); see also Licht v. Binance Holdings Ltd., No. CV 24-10447-NMG, 2025 WL 625303, at *24-25 (D. Mass. Feb. 5, 2025), report and recommendation adopted, No. CV 24-10447-NMG, 2025 WL 624025 (D. Mass. Feb. 26, 2025); Mun. of Bayamón v. Exxon Mobil Corp., No. CV 22-1550 (SCC), 2025 WL 2630671, at *5-6 (D.P.R. Sept. 11, 2025).

[10] At argument, Glennon's counsel said that we "would probably be justified in assuming" the civil RICO "argument waived."  When asked by one of us whether that means he waived it, Glennon's counsel backtracked a bit and said, "Not unless the Court tells me that I have, no."  Consider this us telling him that he has.

[11] "Under the prima facie standard . . . we accept the plaintiff's (properly documented) evidentiary proffers as true, and [we] construe those facts in the light most congenial to the

- 8 -

personal jurisdiction argument faces the same fate as its civil RICO argument -- appellate waiver -- for several reasons.

To start: among other things, this appeal poses evidentiary questions about (1) whether the statements in Glennon's "proffer" below were "properly documented," such that the district court should have considered them under our prima facie standard caselaw, and (2) how the trial record interacts with Glennon's proffers. See Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020). Still, even if we were to put those issues aside and accept what Glennon says is properly documented evidence as true (and we're not sure we can), there is a more fundamental problem with its appellate assertions.

On appeal, Glennon ignores (at least until its reply brief) what the prima facie standard is in service of: the three-part specific personal jurisdiction test of "relatedness, purposeful availment, and reasonableness." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022). And on this essential three-part showing (that Glennon bears the burden on), Glennon's opening brief "provides neither the necessary caselaw nor reasoned analysis to show that [it] is right about any of

---

plaintiff's jurisdictional claim." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (cleaned up).

this."[12]  Rodríguez v. Mun. of San Juan, 659 F.3d 168, 176 (1st Cir. 2011); see also Rodríguez-Machado, 700 F.3d at 49 (finding an argument waived when "amazingly" the opening brief "spends no time describing the legal contours" of the main issue).  Its occasional references to "sufficient contacts" are no more than sprinklings of buzzwords that don't further its case. See Rodríguez, 659 F.3d at 175.

And (again) H.U.R.B.'s response "reviews in detail the case law and concepts that would need to be addressed to develop" a successful personal jurisdiction argument here and why Glennon's position doesn't pass muster.  Doherty, 892 F.3d at 501. Meanwhile, Glennon's retort in its reply brief -- three paragraphs citing three cases for the whole analysis -- is both too little and too late.  See Rodríguez, 659 F.3d at 175-76 (too little); United States v. Mojica-Ramos, 103 F.4th 844, 849 n.3 (1st Cir. 2024) (too late).

Throughout its appellate briefing, Glennon also omits any discussion of the "reasonableness" inquiry, and that alone soils any personal jurisdiction claim.[13]  After all, the "failure

_____

[12] Nor is the proffer organized using that three-part framework.

[13] If Glennon thought its "foreseeability" sentence in its reply brief was a "reasonableness" argument, it is mistaken. "Foreseeability" is one of two necessary showings for purposeful availment.  See Motus, 23 F.4th at 124.  "Reasonableness" is a separate inquiry.  Id. at 122.

to make any one of" the three necessary specific personal jurisdiction "showings dooms any effort to establish specific personal jurisdiction." Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (cleaned up).

The subject matter's complexities make Glennon's sparse briefing even more problematic. After all, "personal jurisdiction is -- as Winston Churchill said of the Soviet Union -- 'a riddle wrapped in a mystery inside an enigma.'" Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 98 (1st Cir. 2024) (Thompson, J., concurring dubitante) (cleaned up); see also Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462 (1st Cir. 1990) (same). By failing to work within the well-established personal jurisdiction framework, aside from one page of discussion in its reply brief, Glennon's briefs and proffer are "hardly a serious treatment of complex issues and [are thus] not sufficient to preserve these points for review." Rodríguez, 659 F.3d at 176 (cleaned up); see also Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 211 (1st Cir. 2023) ("The appellant has made an argument that requires red meat and strong drink -- but she has supported it only with the thinnest of gruel."). That conclusion ends this line of inquiry.

3. Setting aside the first two personal jurisdiction theories, Glennon offers up one more. It asks us to accept, for

the first time, the "conspiracy theory of personal jurisdiction."[14] But Glennon itself hedges on that theory's viability, and several of its own cited cases explain why we shouldn't adopt it today. See Van Schaick v. Church of Scientology of Cal., Inc., 535 F. Supp. 1125, 1132 (D. Mass 1982); In re Lupron Mktg. & Sales Pracs. Litig., 245 F. Supp. 2d 280, 294 (D. Mass. 2003). Van Schaick explains that "those federal courts which have exercised jurisdiction under the conspiracy rationale have done so on the basis of the long-arm statutes applicable in the forum states," and that (as of 1982) "no Massachusetts decision has ever adopted the theory."[15] 535 F. Supp. at 1132 (collecting cases). And In re Lupron Marketing suggests that the conspiracy approach might not comport with federal due process requirements, either. See 245 F. Supp. 2d at 294. Yet Glennon puzzlingly doesn't even try

---

[14] This theory lets personal jurisdiction "be obtained over out-of-state defendants who have conspired with in-state defendants." Glaros v. Perse, 628 F.2d 679, 682 (1st Cir. 1980) (collecting cases). But in its usual formulation, it requires "something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the conspiracy and of which the out-of-state co-conspirator was or should have been aware." Id.

[15] A more recent case (courtesy of H.U.R.B.) makes clear that Massachusetts district courts still haven't really bought into this one (at least as of 2022). See In re TelexFree Sec. Litig., 626 F. Supp. 3d 253, 285 (D. Mass. 2022); but see Ward v. Auerbach, No. CV 16-12543-FDS, 2017 WL 2724938, at *12-13 & n.8 (D. Mass. June 23, 2017), aff'd sub nom., Ward v. AlphaCore Pharma, LLC, 89 F.4th 203 (1st Cir. 2023) (assuming that the theory applies, but holding that the plaintiffs failed to succeed under it anyway).

- 12 -

to explain why the theory comports with either the Massachusetts long-arm statute or federal due process -- complex threshold problems that, again, its own cited cases flag but don't answer. We see no reason to sort those things out ourselves unguided.[16] Glennon cannot "leav[e] the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). So this one's waived too.

4. "Wait! One last thing," says Glennon (we're paraphrasing, of course). Even if it couldn't make out a winning personal jurisdiction theory just yet, it insists it should get the benefit of discovery to harvest more facts related to personal jurisdiction. And so it contends the district court erred in depriving it of such discovery.

True, "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997). But Glennon doesn't fit the bill.

_____

[16] To be clear: like the last time we addressed the conspiracy theory of personal jurisdiction (back in 1980), we aren't answering the question; we're just passing on it. See Glaros, 628 F.2d at 682 n.4.

- 13 -

To start, the "standard for reversing a district court's decision to disallow jurisdictional discovery is high."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). We'll only overturn such a denial of discovery "upon a clear showing of manifest injustice," meaning that the district court's decision "was plainly wrong and resulted in substantial prejudice to the aggrieved party."  Id. (cleaned up).  Glennon doesn't acknowledge that heightened standard of review, let alone explain why the district court's denial of jurisdictional discovery was an abuse of discretion.  And anyway, Glennon has (at least before us) waived all its personal jurisdiction arguments, so it necessarily hasn't "presented what amounts to a 'colorable' claim for personal jurisdiction."  Id.  "As a result, we can hardly state that the district court was 'plainly wrong' in denying discovery for lack of a colorable claim."  Id.  We need say no more.[17]

Four up, four down.  It turns out that Glennon's arguments about personal jurisdiction over this out-of-state landscaping company and its officer are actually "mulch ado about nothing."  Cf. William Shakespeare, Much Ado About Nothing act 2, sc. 3, ll. 871-72 (Balthasar: "Note this before my notes; There's not a note of mine that's worth the noting.").

---

[17] Well, we'll say one more thing on this one.  We also don't buy Glennon's unsupported assertion that jurisdictional discovery was "mandatory" in these circumstances.

## III. WRAP UP

All told, we **reverse** the district court's dismissal of Glennon's case against Debra but **affirm** the dismissal without prejudice of the claims against the remaining defendants.[18]  Costs to H.U.R.B. and Boisvert.

---

[18] We remind the parties that affirming a dismissal without prejudice might possibly mean that Glennon can refile in the district court with clearer pleadings (or in another jurisdiction where personal jurisdiction over H.U.R.B. is clearer) to cure the deficiencies highlighted here and below.